UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| KELLY SUE SENKBEIL, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 1:16-cv-00438-SLC |
|  | ) |  |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Kelly Sue Senkbeil appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (DE 1). Senkbeil filed her opening brief on May 26, 2017 (DE 16), and the Commissioner filed a response on September 6, 2017 (DE 21); Senkbeil declined to file a reply brief (DE 22). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Senkbeil applied for DIB and SSI in May 2015, alleging disability as of May 20, 2014. (DE 10 Administrative Record ("AR") 270-82). The Commissioner denied Senkbeil's application initially and upon reconsideration. (AR 171-231). A hearing was held on April 26, 2016, before Administrative Law Judge Stephanie Katich (the "ALJ"), at which Senkbeil, who

---

[1] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

was represented by counsel, and a vocational expert, Sharon Ringenberg (the "VE"), testified. (AR 42-90). On July 22, 2016, the ALJ rendered an unfavorable decision to Senkbeil, concluding that she was not disabled because despite the limitations caused by her impairments, she could perform her past relevant work as a fast-food worker, both as Senkbeil actual performed it and as it is generally performed. (AR 19-34). The Appeals Council denied Senkbeil's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Senkbeil filed a complaint with this Court on December 27, 2016, seeking relief from the Commissioner's final decision. (DE 1). In this appeal, Senkbeil challenges various aspects of the ALJ's step-four finding that she could perform her past relevant work as a fast-food worker. (DE 16 at 4-17).

At the time of the ALJ's decision, Senkbeil was 55 years old (AR 34, 270) and had a 10th grade education (AR 303). Per the VE's past work summary, Senkbeil had past work experience as a gas station cashier, a newspaper delivery driver, and a fast-food worker. (AR 449). In her application, Senkbeil alleged disability due to a bipolar disorder, anxiety, depression, a heart condition, and high blood pressure. (AR 302).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is

3

currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On July 27, 2016, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 19-34). At step one of the five-step analysis, the ALJ found that Senkbeil had not engaged in substantial gainful activity since her alleged onset date. (AR 22). At step two, the ALJ found that Senkbeil had the following severe impairments: history of coronary artery disease, chronic obstructive pulmonary disease/emphysema, degenerative disc disease of the lumbar spine, a depressive disorder, a generalized anxiety disorder, and a bipolar disorder. (AR 22). At step three, the ALJ concluded that Senkbeil did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 24-25).

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

4

Before proceeding to step four, the ALJ determined that Senkbeil's symptom testimony was not entirely consistent with the medical evidence and other evidence of record (AR 27), and the ALJ assigned her the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . except that she can occasionally climb ramps and stairs, she can never climb ladders, ropes, or scaffolds, she can frequently balance, stoop, and kneel, she can occasionally crouch and crawl, she should avoid concentrated exposure to extreme cold, extreme heat and humidity, fumes, odors, dusts, gases, and poor ventilation, and she should avoid all exposure to hazards such as heights and dangerous moving machinery. In addition, the claimant can understand, remember, and carry out simple instructions and tasks, she can make judgments on simple work-related decisions, she can respond appropriately to usual work situations, she can deal with routine changes in a routine work setting, and she can respond appropriately to supervisors, coworkers, and the general public.

(AR 26). Based on the RFC and the VE's testimony, the ALJ concluded at step four that Senkbeil could perform her past relevant work as a fast-food worker, either as generally or as actually performed. (AR 33). Therefore, Senkbeil's applications for DIB and SSI were denied. (AR 33).

### C. Past Work as Substantial Gainful Activity

Senkbeil first argues that her past employment at Burger King did not constitute past relevant work under the regulations because it was not performed at the substantial gainful activity level. As such, Senkbeil contends that the ALJ erred by not proceeding to step five and finding that she was deemed disabled under the Medical-Vocational Guidelines based on her "advanced age" of 55, her limited education, and her assigned RFC for light work. (DE 16 at 5).

A position qualifies as past relevant work "when it was done within the last 15 years, lasted long enough for [a claimant] to learn to do it, and was substantial gainful activity." 20

5

C.F.R. §§ 404.1565, 416.965; *see also* SSR 82-62, 1982 WL 31386, at *1 (Jan. 1, 1982). Generally, in evaluating work activity for substantial gainful activity purposes, the primary consideration is the earnings derived from the work activity. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). Under Social Security regulations, the monthly substantial gainful activity amount was $980 in 2009 and $1000 in 2010 and 2011. Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html (last visited June 6, 2018).

Senkbeil asserts that her earnings from Burger King in 2009 to 2011 do not represent substantial gainful earnings. More specifically, Senkbeil suggests that her work history report submitted with her application, which indicates that she worked as a crew member at a restaurant (Burger King) from December 2009 and March 2011, "might be somewhat inaccurate." (DE 16 at 6 (citing AR 308)). She points to the certified earnings record that was added by the Agency, which reflects totals earnings of $2756.25 in 2008, $346.50 in 2009, $9788.05 in 2010, and $3055.21 in 2011. (DE 16 at 6 (citing AR 285, 292)). Senkbeil urges that the certified earnings record reveals earned work credits in the first two quarters of 2011, indicating that she may have worked after March 2011 as she initially represented. She claims that if she did work into the second quarter of 2011, then she actually earned less per month in 2011 than the monthly substantial gainful activity amount.

Senkbeil's argument is speculative, and thus, unpersuasive. At the hearing, Senkbeil testified that she quit her job at Burger King after a year and a half, apparently over a disagreement with her boss. (AR 59-61, 302). She testified that she "ran the kitchen" at Burger King, that it was a full-time job, and that she sometimes worked more than 40 hours per week. (AR 59-60). Senkbeil represents on her work history report submitted with her application that

6

she was a kitchen worker from 2009 to 2011, earning $8.25 an hour, five days a week, which equates to about $1320 a month. (AR 366, 386). Senkbeil earned $3055.21 in 2011 and represented on her work history report that she stopped working in March of that year, which would also equate to earning over $1000 a month. (AR 285, 292, 308). The ALJ reasonably determined from the evidence of record and Senkbeil's testimony that Senkbeil's past employment at Burger King qualified as past relevant work.

Moreover, the ALJ and the VE both stated at the hearing that Senkbeil's past job at Burger King, which the VE characterized as a fast-food worker, was past relevant work. (AR 33, 68-69, 79, 86). Senkbeil, who was represented by counsel at the hearing, did not question or object to this conclusion about her earnings at that time. Nor did Senkbeil raise the issue of earnings in her post-hearing argument submitted one week after the hearing. (AR 455-68). "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making [her] strongest case for benefits." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987); *see also Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010); *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

In sum, it is Senkbeil, as the claimant, who bears the burden at step four to prove that she cannot perform her past relevant work. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). Here, Senkbeil does not provide any specific date that she stopped working other than March 5, 2011, and thus, her argument amounts to mere speculation. Furthermore, Senkbeil was represented by counsel at the hearing and had the opportunity to challenge the ALJ's and the VE's assessment

7

of her past earnings as past relevant work, but she did not do so. Nor did she raise the issue of her earnings in her post-hearing submissions. Therefore, Senkbeil has failed to satisfy her burden in her first challenge to the ALJ's step-four determination.

### D. Past Work as Light, Unskilled Work

Senkbeil next argues that the VE's testimony characterizing her past relevant work as a fast-food worker and a light exertional, unskilled job is unreliable, because the VE relied on the Dictionary of Occupational Titles ("DOT"), which Senkbeil contends is an outdated source of vocational information. Senkbeil further argues that the ALJ erred by summarily dismissing her objection to the VE's testimony about the classification of her past relevant work as a fast-food worker versus a fast-food cook, which is a medium exertional job. For these reasons, Senkbeil contends that the ALJ's step-four finding is not supported by substantial evidence.

1. The Vocational Evidence at the Hearing

At the hearing, Senkbeil testified that she worked at Burger King for about a year and a half, leaving the job in 2011. (AR 59). When asked what she did there, Senkbeil responded that she "ran the kitchen," stating that she would "get everything ready for breakfast and then . . . work into a little bit of lunch." (AR 59). The work involved mostly standing and walking, and she lifted and carried boxes weighing up to 20 pounds. (AR 60, 63). She testified that she also, at some point in time, "ran a grill at Wendy's." (AR 64).

When addressing the VE, the ALJ stated that they would be focusing on Senkbeil's last job at Burger King because her other past work was too remote in time or did not rise to the level of substantial gainful activity. (AR 69). Specifically, the ALJ inquired of the VE:

> Q    [H]ave you reviewed the exhibits in the claimant's file made available to you before the hearing, and listened to

> the claimant's hearing testimony today to familiarize
> yourself with the claimant's vocational background?
>
> A. Yes, I have.
>
> Q. Okay, Counsel, any objections to Ms. Ringenberg's
> qualifications to serve as a vocational expert?
>
> A. No objections, Your Honor.
>
> Q. And Ms. Ringenberg, do you need any additional
> information about the claimant's past work? Again
> primarily I think focusing on this work as a fast food
> worker, or in the fast food industry? You tell me the title
> of it. Do you need more information about that work
> before testifying?
>
> A. No, I don't believe so.
>
> Q. All right. So tell me about the claimant's past work?
>
> A. The job of a fast food worker, it's DOT 311.472-010. It's
> SVP 2, which is unskilled, light as per DOT, and light as
> per claimant.
>
> Q. Okay.

(AR 79-80). The VE then testified that a hypothetical individual of Senkbeil's age, education, and RFC could perform the job of a fast-food worker both as it is generally performed and as Senkbeil actually performed it. (AR 86). The ALJ also asked the VE whether any part of her hearing testimony was inconsistent with or conflicted with the DOT, and the VE responded that it did not. (AR 88). Senkbeil's counsel did not inquire further or raise an objection at that time.

However, at the close of the hearing, the ALJ kept the record open for 21 days after the hearing so that Senkbeil could submit additional outstanding medical records. (AR 88). Seven days after the hearing, Senkbeil submitted objections and additional vocational evidence, contending that a fast-food worker is now a medium exertional, semi-skilled job, rather than a

9

light, unskilled job as described by the DOT. (DE 16 at 7-8 (citing AR 455-68)). Senkbeil also argued that the VE misclassified her past relevant work at the hearing as that of a fast-food worker, which is a light exertional job per the DOT. She asserted that her past relevant work was primarily that of a cook, and thus, more akin to a fast-food cook, which is a medium exertional job per the DOT. (DE 455).

2. The ALJ's Decision

The ALJ considered Senkbeil's post-hearing objections and vocational evidence, but found them "without merit," stating that her counsel did not object at the hearing to the VE's qualifications or the VE's classification of her past relevant work. (AR 19-20). The ALJ explained that the VE's classification of Senkbeil's past relevant work was based on Senkbeil's sworn testimony regarding her duties and how they were performed, and that the ALJ declined "to insert the unverified opinion of an unqualified and unsworn 'witness' for the testimony and expert opinion expressed by [the VE] at the hearing." (AR 19).

3. The DOT

Senkbeil first argues that the DOT is an obsolete resource in that the DOT was last updated in 1986, and as such, the VE's testimony based on the DOT is not substantial evidence supporting the ALJ's step-four finding. (DE 16 at 8). Senkbeil contends that more recent vocational evidence that she submitted after the hearing demonstrates that a fast-food worker is now a medium exertional, semi-skilled job, which is inconsistent with her assigned RFC. (DE 16 at 8 (citing AR 455-68)).

Indeed, the Seventh Circuit Court of Appeals has commented on several occasions that the DOT is an outdated resource upon which to base job descriptions or estimates of the number

10

of available jobs of a particular kind. *See Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015); *Hermann v. Colvin*, 772 F.3d 110, 112-13 (7th Cir. 2014); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). Nevertheless, "the Court has not held that it was a *per se* error to rely on the DOT." *Boeck v. Berryhill*, No. 16-C-1003, 2017 WL 4357444, at *20 (E.D. Wis. Sept. 30, 2017) (finding no error in the ALJ's reliance on the DOT). One district court succinctly explained why it is not a *per se* error for a VE to rely on the DOT:

> Given the fact that the DOT remains first in the list of publications of job data of which the SSA has taken administrative notice, 20 C.F.R. § 404.1566(d)(1), this is not surprising. Holding that use of the DOT constitutes *per se* error would call into question all of the SSA adjudications in which the DOT plays a role. It would also run afoul of the rule requiring judicial deference to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations. While O*NET may be a better source of job data than the DOT, it is hard to see why reliance on the DOT could be considered error in light of the SSA regulations.

*Id*. (citations and internal quotation marks omitted); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").

Notably, Senkbeil, who bears the burden at step four, does not point to any case in which the Seventh Circuit reversed the Commissioner's decision solely on the basis of the ALJ's reliance on the DOT. *See, e.g.*, *Ragland v. Berryhill*, No. 17-C-0730, 2018 WL 1757656, at *11 (E.D. Wis. Apr. 12, 2018) (collecting cases and observing that the district courts in the Seventh Circuit have consistently concluded that the Seventh Circuit's criticisms of the DOT are dicta and do not merit remand). As such, Senkbeil fails to establish that the VE's reliance on the

11

DOT, standing alone, warrants a remand of the ALJ's step-four determination.

    4. <u>The VE's Classification of Senkbeil's Past Relevant Work</u>

Senkbeil also contends that the VE erred by mischaracterizing Senkbeil's past relevant work as a fast-food worker, asserting that her past relevant work is actually more appropriately classified as a fast-food cook, which is a medium exertional job under the DOT. (DE 16 at 15-16). Of course, a medium exertional job is inconsistent with Senkbeil's assigned RFC for light work. Senkbeil argues that the ALJ failed to adequately confront the VE's misclassification of her past relevant work and the inconsistencies between the evidence of record and the DOT description of a fast-food worker. (DE 16 at 16).

    Per the DOT, a fast-food worker performs the following duties:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or deserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. *May cook or apportion french fries or perform other minor duties to prepare food*, serve customers, or maintain orderly eating or serving areas.

http://www.occupationalinfo.org/31/311472010.html (last visited June 6, 2018) (emphasis added). In turn, a fast-food cook per the DOT performs the following functions:

> Prepares and cooks to order foods requiring short preparation time: Reads food order slip or receives verbal instructions as to food required by patron, and prepares and cooks food according to instructions. Prepares sandwiches [SANDWICH MAKER (hotel & rest.) 317.664-010]. Prepares salads and slices meats and cheese, using slicing machine, [PANTRY GOODS MAKER (hotel

12

        & rest.) 317.684-014]. Cleans work area and food preparation
equipment. May prepare beverages [COFFEE MAKER (hotel &
rest.) 317.684-010]. May serve meals to patrons over counter.

http://www.occupationalinfo.org/31/313374010.html (last visited June 6, 2018).

      Senkbeil argues that the her past relevant work at Burger King was *primarily* cooking the food for both breakfast and lunch, which goes beyond "minor duties to prepare food" encompassed in the DOT description of a fast-food worker. (DE 16 at 15-16). Indeed, as summarized above, Senkbeil testified at the hearing that she "ran the kitchen" at Burger King. (AR 59-60). In her first work history report, she wrote that she was a "cook, cashier," but in a subsequent work history report, she wrote that she was a "kitchen worker," where she "made and cook[ed] food." (AR 331, 366, 386). She indicated that she "made the food, did prep work and cooking[,]" and "had to clean [her] work station." (AR 392). In fact, the vocational information report completed by the Agency on September 4, 2015, reflects, in relevant part:

> Clmt worked as a cook for Burger King between 06/2009 -
> 03/2011. She worked 8 hours/day, 5 days/week, at a rate of
> $8/hour. Clmt always worked the breakfast/lunch shift. She
> worked from 5AM - 1PM. When she first went in, she would
> "start all the fryers for hashbrowns," make eggs for sandwiches-
> eggs came in liquid form and fried them up on a grill, and then
> would start the flame-broiled oven for bacon and sausage to be
> cooked. Her 1st hour was all prep work, and then starting at 6AM,
> clmt would start preparing food to order, which included
> assembling breakfast sandwiches and placing hash browns in the
> fryers as necessary. Starting at 11AM, clmt's job would shift to
> preparing lunch sandwiches. Beef patties were placed in the
> flame-broiled oven starting at 10:30, and were ready to be used for
> sandwiches at 11AM. She also prepared breaded fish and chicken
> in the deep fryer. . . .

(AR 411).

      Considering all of this evidence, Senkbeil argues that her past relevant work most

accurately aligns with that of a fast-food cook under the DOT, rather than a fast-food worker.
(DE 16 at 17). Senkbeil faults the ALJ for the cursory manner in which the ALJ dismissed her objections raised in her post-hearing submission concerning the classification of her past relevant work. In addressing the objections in her decision, the ALJ stated, in relevant part:

> Ms. Buzzard, the representative appearing at the hearing, did not object to Ms. Ringenberg's qualifications as an Agency-appointed vocational expert, and Ms. Buzzard did not object to Ms. Ringenberg's classification of the claimant's past relevant work as a fast food worker. Ms. Ringenberg's classification of this past job was based upon the claimant' sworn hearing testimony regarding her duties and how they were performed, and the [ALJ] finds that neither Ms. Ringenberg's nor the claimant's testimony in this regard was inherently unreliable.
> . . . .
>
> [The ALJ] further finds that a supplemental hearing is unnecessary, and will serve only to prolong the resolution of the claimant's claims.

(AR 19).

The Court agrees with Senkbeil that the ALJ erred in cursorily dismissing Senkbeil's post-hearing objections, which were submitted just seven days after the hearing when the record was still being held open by the ALJ. In fact, the ALJ even contemplated at the hearing that she may need to obtain further testimony from the VE, stating:

> ALJ: So I think, Counsel, what I'm going to do is I'm going to sit tight for the moment. We definitely want to see those Park Center medical records.
>
> Atty: Okay.
>
> ALJ: And - - but I want to give you also an opportunity to inquire further of our vocational expert. Are there any additional hypotheticals you might want to ask her. But I can always follow up with the - - with interrogatory if I need to, or do a supplemental hearing if we need to. But I

14

>           think that's as far as I'm going to go until I see those
>           additional mental health records.
>
> . . . .
>
> ALJ:    Okay. Are there questions you want to ask the vocational
>         expert?
>
> Atty:   Not at this time. I will wait [until] we get those in. We can
>         respond . . . if there's interrogatories or anything like that.

(AR 87).

Furthermore, the ALJ's statement that the VE's classification of Senkbeil's past relevant work "was based upon the claimant's sworn hearing testimony regarding her duties and how they were performed" is thin, considering that Senkbeil's testimony at the hearing was that she "ran the kitchen." (AR 60). And that Senkbeil's challenge came in a post-hearing submission is not grounds to summarily dismiss her objections. Another district court succinctly reasoned on that point:

> The ALJ pointed out that the challenge came in a post-hearing
> submission, and that as a result, the VE "cannot defend her
> testimony." That observation does not provide a sound basis for
> the ALJ's failure to resolve the challenge to the VE's testimony.
> We see no reason why the ALJ could not have obtained further
> information from the VE (by reopening the hearing or by other
> means) to address this point.

*Roberts v. Colvin*, No. 14 C 6081, 2016 WL 727207, at *6 (N.D. Ill. Feb. 22, 2016) (citation omitted).

Thus, based on the record presented in this particular instance, the ALJ failed to sufficiently address Senkbeil's post-hearing objections to the VE's testimony when she swept the objections away without ever re-contacting the VE or considering the substance of Senkbeil's challenge concerning the VE's classification of her past relevant work. Nor is this oversight

mere harmless error. *See Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination). If Senkbeil's past relevant work is more akin to a fast-food cook, a medium exertional job under the DOT, rather than a fast-food worker, a light exertional job under the DOT, Senkbeil would be unable to perform her past relevant work based on her assigned RFC for light work.

Indeed, SSR 82-62 highlights the importance of adequate consideration of a claimant's past relevant work:

> Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work.
>
> . . . .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982); *see* SSR 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982) ("Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable.").

For this reason, the ALJ's step-four finding lacks the support of substantial evidence and will be remanded. Upon remand, the ALJ should further inquire of the VE with respect to Senkbeil's objections pertaining to the classification of her past relevant work as a fast-food worker.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is directed to enter a judgment in favor of Senkbeil and against the Commissioner.

SO ORDERED.

Entered this 22nd day of June 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge